Judy Anne GREEN, individually and as mother and next friend of John J. Green and John J. Green, Plaintiffs–Appellants,

v.

Donna E. SHALALA, Secretary of Health and Human Services, Defendant–Appellee.

No. 94–2824.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 14, 1994.

Decided March 30, 1995.

Frank H. Byers (argued), Fuller, Hopp, McCarthy, Quigg & Byers, Decatur, IL, for plaintiffs-appellants.

David H. Hoff, Asst. U.S. Atty., Office of the U.S. Atty., Urbana Div., Urbana, IL, and Robert C. Stephens (argued), Department of Health and Human Services, Region V, Office of the Gen. Counsel, Chicago, IL, for defendant-appellee.

Before COFFEY, RIPPLE and KANNE, Circuit Judges.

RIPPLE, Circuit Judge.

In 1984, John Charles Green, husband of the appellant Judy Anne Green, disappeared from his home and never returned. Mrs. Green waited seven years and then, believing her husband to be dead, applied for child survivor insurance benefits on behalf of her youngest child, John J. Green. After a hearing conducted by an administrative law judge ("ALJ"), the Secretary of Health and Human Services denied her claim. The district court affirmed the denial. We now vacate the district court's judgment because the ALJ did not discuss important evidence and therefore his decision cannot be considered based on substantial evidence.

# I

## BACKGROUND

On the morning of January 4, 1984, Mr. Green left his home in Decatur, Illinois to attend to his store, Little John's Water Bed Shop. He never returned. That day, Mrs. Green found a note from her husband, apologizing for "all the problems." Two days later, Mr. Green's parents received an envelope postmarked Louisville, Kentucky containing letters for Mrs. Green and the children as well as the keys to the truck Mr. Green had been driving. The truck was found at a bus station in Champaign, Illinois.

The letter to Mrs. Green read:

Here are some of the keys house store Buick Desk and warehouse. I won't go

into it again but as you can tell I have failed again. I won't be back please make the best of your life and the kids.

(Admin.R., Ex. 9). In the letter to his children Mr. Green wrote:

I am sorry for what I have done to you guys. Remember I Love all of you very very much and will alwise [sic] miss you my thoughts are with you. I am sorry I lied to you when I first came back and told you I would never do this again. I didn't think I would. It is all my fault. Judy and all 3 of you have been wonderful it is nothing that any of you did. I am just a failure at work, home and father and as such I think it would be best if I left. Much Love and Luck alwise [sic]

Your Father

John

(Admin.R., Ex. 9).

After Mr. Green's disappearance, Mrs. Green discovered that the business was in serious financial trouble. A check to a major supplier was not honored by the bank and twenty customers filed complaints with the Illinois Attorney General regarding merchandise for which they had paid but which never had been delivered. The Attorney General filed a civil action against Mr. Green, but the suit was dismissed without prejudice because Mr. Green could not be located and therefore could not be served.

During the past ten years, Mr. Green has not attended any family function including his children's graduations from high school and college, his daughter's marriage, and the festivities surrounding the birth of his grandchild. Mr. Green also did not respond to his wife's filings for divorce and bankruptcy in 1985 and 1987 respectively; notice of each action was published in the local newspaper. He did not attend his parents' funerals or claim the inheritance left to him. The Circuit Court of Macon County, Illinois declared Mr. Green legally dead on July 2, 1991. Mrs. Green also received the proceeds from a life insurance policy on the ground that her husband was presumed dead.

In February 1991, Mrs. Green filed for child survivor benefits on behalf of her son John Jason Green.[1] In April 1992, the ALJ held a hearing and subsequently denied the claim on the ground that Mr. Green's disappearance was not unexplained. The ALJ stated that Mr. Green had a history of disappearing to avoid prosecution. The ALJ noted that, in 1978, Mr. Green had left for work and had not returned home. Using the name Terry North, he lived for eighteen months in missions in Reno, Nevada and Eugene, Oregon. On that earlier occasion, because he had filed a false loan application prior to his departure, he was charged with theft upon his return. He was placed on probation and successfully completed the term. The ALJ also noted that, even though the Illinois Attorney General had dismissed the charges against Mr. Green for customer fraud allegedly committed prior to his second departure, those charges could be refiled if he returned. The ALJ also concluded that the investigations conducted by the Attorney General's office and the County Sheriff's office were not thorough and did not establish Mr. Green's death. The notes to Mrs. Green and to the children did not include an indication that Mr. Green contemplated suicide; rather, the letters expressly stated that Mr. Green would always miss them and would not return. Finally, the ALJ determined that Mr. Green's failure to attend important family gatherings was not persuasive.

In April 1993, the Appeals Council denied Mrs. Green's request for review. She then filed a complaint in the district court. Both parties moved for summary judgment. Mrs. Green argued that the ALJ erred in concluding that a presumption of death is raised only when it is established that a person has been absent for seven years and the absence is unexplained. She also contended that the Secretary's decision was not supported by substantial evidence and that the Secretary erred in failing to explain Mr. Green's continued absence or to consider the death certificate issued by the Circuit Court of Macon County, Illinois. The district court rejected

---

1. Although Mrs. Green has two other children, only John was still a minor at the time of the application.

these arguments and granted summary judgment for the Secretary.

## II

## ANALYSIS

We review a district court's grant of summary judgment de novo. *Schultz v. General Elec. Capital Corp.,* 37 F.3d 329, 333 (7th Cir.1994). Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. *Id.*

### A. *The Burden of Proof and Presumption of Death*

Title Two of the Social Security Act provides for the payment of insurance benefits to the child "of an individual who dies a fully or currently insured individual." 42 U.S.C. § 402(d)(1). Where the claimant for such benefits cannot establish the individual's death, *see* 20 C.F.R. § 404.720 (1990), the person will be presumed dead based upon submission of the following evidence:

(a) A certified copy of, or extract from, an official report or finding by an agency or department of the United States that a missing person is "presumed to be" dead as set out in Federal law (5 U.S.C. § 5565)....

(b) Signed statements by those in a position to know and other records which show that the person has been absent from his or her residence for no apparent reason,

and has not been heard from, for at least 7 years...:

20 C.F.R. § 404.721.

The parties in this case dispute how the burden of production should be allocated between them in determining whether a person should be presumed dead. In his decision, the ALJ stated: "In order for there to be a presumption of death, the absence must be unexplained." Mrs. Green contends that she is required to show only that the missing person has been absent for seven years for the presumption to apply. The burden then shifts to the Secretary, she argues, to prove that the individual is alive or to provide an explanation to account for the individual's absence in a manner consistent with continued life. The Secretary, on the other hand, interprets § 404.721(b) to place the burden of production on the claimant to show that the insured person has not been heard from for at least seven years *and* that he has been absent for no apparent reason before the presumption is invoked.

The courts of appeals that have addressed this issue [2] have all accepted the interpretation advocated by Mrs. Green. Indeed, the Secretary has issued acquiescence rulings, agreeing to abide by that standard for claimants residing in those circuits.[3] However, the Secretary continues to adhere to her original interpretation of § 404.721(b) in cases arising in the Seventh Circuit.[4] The Secretary contends that her interpretation should be accorded great deference and that it is appropriate to rest the burden of establishing that the wage earner's disappearance

2. *Shelnutt v. Heckler,* 723 F.2d 1131 (3d Cir. 1983); *Aubrey v. Richardson,* 462 F.2d 782 (3d Cir.1972); *Autrey v. Harris,* 639 F.2d 1233 (5th Cir. Unit A Mar. 1981) (per curiam); *Johnson v. Califano,* 607 F.2d 1178 (6th Cir.1979); *Brewster v. Sullivan,* 972 F.2d 898 (8th Cir.1992); *Secretary of Health, Educ. & Welfare v. Meza,* 368 F.2d 389 (9th Cir.1966); *Edwards v. Califano,* 619 F.2d 865 (10th Cir.1980). The *Autrey* decision is binding as precedent in the Eleventh Circuit as well because it was issued before October 1, 1981, the date on which the former Fifth Circuit split into the Fifth and Eleventh Circuits. *See Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

3. *See* AR 86–6(3), AR 86–7(5), AR 86–8(6), AR 86–9(9), AR 86–10(10), AR 86–11(11), AR 93–6(8).

4. We note, however, that the Secretary has proposed a revision to § 404.721(b). The proposed regulation would remove the language "for no apparent reason." 59 Fed.Reg. 37,002 (proposed July 20, 1994). Under this new regulation, the Secretary will follow the interpretation advocated by Mrs. Green and adopted by the other courts of appeals. In addition, the Secretary proposes adding section 404.722(b) which will provide guidance as to the type of evidence that will rebut the presumption of death. *Id.* The comment period for the proposed regulations ended September 19, 1994; the final rules have not been issued.

is "unexplainable" on the claimant because the family member is in possession of the facts.

An agency's interpretation of its own regulation must be given "controlling weight unless it is plainly erroneous or inconsistent with the regulation." *Thomas Jefferson Univ. v. Shalala,* —— U.S. ——, ——, 114 S.Ct. 2381, 2386, 129 L.Ed.2d 405 (1994) (citations omitted). Therefore, the court must defer to the Secretary's interpretation unless an "alternative reading is compelled by the regulation's plain language or by other indications of the Secretary's intent at the time of the regulation's promulgation." *Id.* (quoting *Gardebring v. Jenkins,* 485 U.S. 415, 430, 108 S.Ct. 1306, 1314, 99 L.Ed.2d 515 (1988)). Deference, however, is not synonymous with acquiescence, *Batanic v. Immigration & Naturalization Service,* 12 F.3d 662, 665 (7th Cir.1993), and "requires us to accept only those agency interpretations that are reasonable in light of the principles of construction courts normally employ." *Pettibone Corp. v. United States,* 34 F.3d 536, 541 (7th Cir.1994) (quoting *EEOC v. Arabian Am. Oil Co.,* 499 U.S. 244, 260, 111 S.Ct. 1227, 1236–37, 113 L.Ed.2d 274 (1991) (Scalia, J., concurring in part and concurring in the judgment)).

Other courts of appeals, in rejecting the Secretary's interpretation, have relied upon two principal arguments. First, it is widely agreed that the Secretary's regulation should be interpreted consistent with the common law origin of the presumption of death. *Brewster v. Sullivan,* 972 F.2d 898, 902 (8th Cir.1992); *Edwards v. Califano,* 619 F.2d 865, 869 (10th Cir.1980) (noting that agency's interpretation of its own regulation is not entitled to great deference where regulation is based on general common law principles rather than on agency's own expertise); *Johnson v. Califano,* 607 F.2d 1178, 1182 n. 10 (6th Cir.1979). At common law, a presumption of death arose after a person's seven-year absence. The purpose of the presumption was to lessen the burden on those individuals whose affairs were affected by the missing person's indefinite absence to the same degree as if that person were dead. *See Brewster,* 972 F.2d at 902; *Blew v. Rich-*

*ardson,* 484 F.2d 889, 892 n. 6 (7th Cir.1973). Second, courts have held that the Secretary's position defeats the very purpose of the presumption since it creates a presumption of life rather than of death. *Brewster,* 972 F.2d at 902; *Shelnutt v. Heckler,* 723 F.2d 1131, 1133 (3d Cir.1983); *Autrey v. Harris,* 639 F.2d 1233, 1234 (5th Cir. Unit A Mar. 1981) (per curiam); *Johnson,* 607 F.2d at 1182; *Secretary of Health, Educ. & Welfare v. Meza,* 368 F.2d 389, 392 (9th Cir.1966). Under the Secretary's interpretation, it is argued, the claimant must refute every reasonable theory which may be potentially present, a "nearly impossible burden of proof." *Johnson,* 607 F.2d at 1182.

Although this court has never addressed the issue directly, our analysis in *Blew v. Richardson,* 484 F.2d 889 (7th Cir.1973), which discusses the use of pre-departure facts to provide an explanation other than death for a person's disappearance, supports Mrs. Green's approach. The court in *Blew* noted that the Secretary's regulation is based on the common law presumption. It then explained the burden of proof as follows:

> The evidence which raises the presumption is proof that Ballard was absent and unheard of for a period of seven years after November 15, 1958. The evidence on which the Secretary relies to rebut that presumption concerns events on or before November 15, 1958.

*Id.* at 892.

We see no reason to depart from the common-sense course chosen by the circuits that have confronted the issue squarely. The Secretary's traditional position, as opposed to the one she follows in those circuits that have rejected that position and the one she now proposes in the new regulation, places an untenable burden on the claimant to disprove every possible explanation for the missing person's absence. We are unpersuaded by the Secretary's arguments and hold that, under 20 C.F.R. § 404.721, a rebuttable presumption of death is raised once the claimant establishes a seven-year absence. If, however, the Secretary comes forward with evidence to explain the missing person's absence in a manner consistent with continued life, the burden of production has

been satisfied and the presumption is rebutted. Once the presumed fact—that the missing person is dead—has been effectively rebutted, the presumption ceases to exist. *Aubrey v. Richardson*, 462 F.2d 782, 784 (3d Cir.1972) (citing *Gardner v. Wilcox*, 370 F.2d 492, 494 (9th Cir.1966)).[5] The factfinder must then weigh all the evidence, recognizing that the burden of persuasion on the existence of the presumed fact remains with the party originally invoking the presumption. *Panduit Corp. v. All States Plastic Mfg. Co.*, 744 F.2d 1564, 1579 (Fed.Cir.1984); *Mando v. Secretary of Health & Human Servs.*, 737 F.2d 278, 282 (2d Cir.1984).

Mrs. Green presented evidence that her husband had neither been seen nor heard from for more than seven years. Thus, she was entitled to invoke the presumption of death. However, because there was other evidence suggesting that Mr. Green simply had abandoned his family because of financial and legal troubles, the presumption was rebutted and Mrs. Green had to bear the burden of persuasion. We therefore examine whether the record supports the position of the Secretary.

### B. *Substantial Evidence*

■ The Secretary argues that, whether or not the ALJ properly allocated the burden of proof with respect to the presumption, a remand is unnecessary because the ALJ weighed all the evidence and his decision is supported by substantial evidence. Conversely, Mrs. Green contends that the ALJ's finding that her husband disappeared in a manner consistent with continued life was based on speculation and conjecture and that the ALJ failed to consider the presumptive medical certificate of death for Mr. Green issued by the Macon County Circuit Court. The Appeals Council denied review and thus the ALJ's findings constitute the final decision of the Secretary. 20 C.F.R. § 404.981. We must affirm the Secretary's decision if the outcome is supported by substantial evidence. 42 U.S.C. § 405(g); *see Blew*, 484

F.2d at 893. Substantial evidence is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir.1994) (quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)).

■ This court has never had occasion to consider specifically the relevancy of a state court's presumptive determination of death in child survivor benefits cases. However, we have often addressed, in the context of Social Security disability cases, the type of evidence an ALJ must weigh in his decision and the extent to which the ALJ must state the reasons for his conclusions to permit an informed review. *E.g.*, *Ray v. Bowen*, 843 F.2d 998, 1002 (7th Cir.1988); *Orlando v. Heckler*, 776 F.2d 209, 213 (7th Cir.1985). A written evaluation of each piece of evidence or testimony is not required. However, in cases where the claimant presents considerable proof to counter the agency's position, the ALJ must articulate, at some minimal level, his analysis of the evidence. *Orlando*, 776 F.2d at 213; *Stephens v. Heckler*, 766 F.2d 284, 290 (7th Cir.1985) (Flaum, J., concurring). Only then may a reviewing court track the ALJ's reasoning and be assured that the ALJ considered the important evidence. *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir.1993) (per curiam). Accordingly, we have held that the ALJ's failure to discuss an entire line of evidence does not meet the minimal level of articulation required. *Id.*

■ Although the certificate of death was included in the exhibits submitted to him, the ALJ made no mention of the state court finding in his decision. Other courts of appeals have concluded that an ALJ may not ignore completely a probate court's determination of death, and that failure to consider such evidence constitutes grounds for reversal. *McKee v. Sullivan*, 903 F.2d 1436, 1439 (11th Cir.1990); *Aubrey*, 462 F.2d at 785. These holdings are compatible with the principles articulated in our own case law regarding the ALJ's responsibility to reflect on all the pertinent information presented. Al-

---

5. *See also Panduit Corp. v. All States Plastic Mfg. Co.*, 744 F.2d 1564, 1579 (Fed.Cir.1984) ("The effect of a presumption of fact ... is to place upon the opposing party the burden of establishing the nonexistence of that fact. The burden on

the opposing party, however, is limited to *production* of evidence. The burden of *persuasion* on the existence of the presumed fact remains throughout on the party invoking the presumption.") (footnote omitted) (emphasis in original).

though the state court's finding of presumptive death is not binding upon the ALJ, it "operates as a profound and comprehensive declaration of rights under state ... law," *Aubrey,* 462 F.2d at 785, and may be highly relevant to the determination the ALJ must make. Although the weight to be given the state court's determination remains within the discretion of the ALJ, he cannot ignore that evidence. In evaluating the persuasiveness of the state court's finding, he may consider the purpose and adversarial nature of the state proceeding as well as the quantum of evidence needed to obtain a presumptive certificate of death. *See McKee,* 903 F.2d at 1439. Because the ALJ did not grapple with significant record evidence in his decision, the denial of child survivor benefits is not supported by substantial evidence. *See Herron,* 19 F.3d at 337.[6] Accordingly, the judgment of the district court is vacated and the case is remanded to permit the ALJ to reconsider the evidence of record in accordance with this decision. We intimate, of course, no opinion with respect to the outcome.

VACATED AND REMANDED.

---

6. We also note that the ALJ did not discuss the payment of proceeds from Mr. Green's life insurance policy following an investigation into his alleged death. Upon remand, the ALJ should evaluate this evidence.