Gerard C. KEPPLE, II, Plaintiff–
Appellant,

v.

Larry G. MASSANARI, Acting Commissioner of Social Security,
Defendant–Appellee.

No. 01–1155.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 20, 2001.

Decided Oct. 4, 2001.

Ashley S. Rose (argued), Glenn Ellyn, IL, for Plaintiff-Appellant.

Gary A. Sultz (argued), Social Security Admin., Office of the Gen. Counsel, Region V, Chicago, IL, for Defendants-Appellees.

Before BAUER, MANION, and EVANS, Circuit Judges.

BAUER, Circuit Judge.

In November of 1994, Gerard C. Kepple, II applied for disability benefits and sup-

plemental security income with the Social Security Administration (SSA). His application and subsequent request for reconsideration were denied. Kepple then requested a hearing before an administrative law judge (ALJ); subsequently, the ALJ found that Kepple could perform certain sedentary jobs and denied his application. Kepple appealed to the Appeals Council, which denied review, making the ALJ's determination the final decision of the SSA. Kepple then sought judicial review of the SSA's decision denying his application in the district court based on 42 U.S.C. § 405(g). The district court affirmed the SSA's decision. On appeal to this court, Kepple argues that the evidence failed to support the ALJ's conclusions. For the reasons set forth in the following opinion, we affirm.

## I. BACKGROUND

On November 10, 1994, Kepple applied for disability benefits and supplemental security income with the SSA claiming that he was disabled since April of 1990 due to a variety of medical problems stemming from diabetes. Kepple has not been employed since 1990 when he worked in his father's law office as a clerk. Prior to that he had worked on an assembly line and had loaded and unloaded trucks for a delivery service. At the time the ALJ rendered her decision in 1997, he was twenty nine years old, had graduated from high school, and had one year of college. At the time the district court rendered its decision, Kepple had three children, ages two, three, and six, and lived with his parents. He was the primary caregiver for the children, doing chores such as cooking and cleaning. Kepple was able to watch television, drive a car, and he took a trip to Hawaii in 1993.

Kepple's ailments stem largely from diabetes mellitus, and include kidney disease, diabetic retinopathy, cataracts, and fatigue. There is some disagreement over the actual acuity of Kepple's vision, which he argues was deteriorating but the ALJ found that it was approximately $^{20}/_{50}$ (corrected) in both eyes. Due to his ailments, Kepple was un able to lift or carry more than ten pounds at a time, could only walk or stand for limited periods of time, and could not perform jobs that required peripheral vision or sustained reading. Most of Kepple's aliments, including his diabetes and vision problems, are controllable with proper treatments and dietary restrictions. However, Kepple has often failed to follow his dietary restrictions or obtain certain treatments causing further complications.

A medical expert, Dr. Glickman, an internist, testified at the hearing that Kepple could perform sedentary work with some vision restrictions. In a letter dated September 15, 1992, Dr. Rubinstein, a nephrologist, stated that Kepple's eyesight was diminishing and nearing blindness. However, this letter was contradicted by the reports of two ophthalmologists which concluded that Kepple's eyesight, while impaired, was stable.

A vocational expert also testified at the hearing that despite his ailments Kepple could perform between 1,600 and 3,400 unskilled sedentary jobs in the national economy. These jobs included cashier, security monitor, charge account clerk, telephone quotation clerk, and assembly worker. Based on the evidence and testimony produced at the hearing, the ALJ found that Kepple was not "disabled" within the meaning of the Social Security Act, 42 U.S.C. §§ 423(a)(1)(D), 1382(a).

## II. ANALYSIS

### A. Standard of Review

 We employ the same standard of review as the district court and review the

ALJ's findings to determine if they are "supported by substantial evidence." *Richardson v. Perales,* 402 U.S. 389, 399–401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Powers v. Apfel,* 207 F.3d 431, 434 (7th Cir.2000). Substantial evidence, although more than a mere scintilla of proof, is "no more than such 'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Diaz v. Chater,* 55 F.3d 300, 305 (7th Cir.1995) (*quoting Perales,* 402 U.S. at 389, 91 S.Ct. 1420). Though we review the entire record to determine if there is relevant evidence adequate to support the ALJ's conclusion, we do not decide the facts anew, re-weigh evidence, or substitute our judgment for that of the ALJ. *Butera v. Apfel,* 173 F.3d 1049, 1055 (7th Cir.1999).

### B. Sufficiency of the Evidence

■ The dispute in this case is primarily over the weight accorded to the facts by the ALJ. Kepple argues that the ALJ "considered only evidence supporting the Acting Commissioner's position without explaining why evidence favorable to the claimant was not evaluated." However, as noted above we do not engage in a weighing of the evidence or substitute our judgment for that of the ALJ. From the record it is clear that the ALJ neither ignored evidence favorable to Kepple nor was the medical expert unqualified to render an opinion. On the contrary, from the ALJ's findings it is clear that she thoroughly reviewed all the evidence and did exactly what she was supposed to do: determine credibility and weight. The ALJ's conclusion that Kepple is not disabled is supported by the opinion of the medical expert, as well as two ophthalmologists. In addition, the fact that Kepple is able to drive a car, watch television, and take care of three small children belies his argument that his vision is so significantly impaired as to prevent him from working. Further-

more, the vocational expert identified a number of jobs in the national economy that a person with Kepple's medical restrictions could hold. Kepple may disagree with the ALJ's findings, but they are "supported by substantial evidence" and will be upheld.

### C. Waiver

■ Kepple also appeals the district court's determination that he should have objected to the qualifications of the medical expert in the administrative hearing. However, the district court first reached the merits of the argument and concluded that the medical expert was qualified to testify. *See* Memorandum Opinion and Order at 21–22. We review the district court's ruling on the merits of the argument. Kepple admits that a medical expert is "not disqualified from testimony because [his] practice speciality does not lie within the area of medicine reflected by claimant's impairment." *See also* 20 C.F.R. § 404.1513(a)(1) (2000). As noted previously, the conclusions of the medical expert are supported by two additional reports by ophthalmologists as well as Kepple's own admissions. Thus, we agree with the district court and conclude that the medical expert was competent to testify and decline to address the waiver issue.

■ For purposes of completeness we note that the Supreme Court's recent decision in *Sims v. Apfel,* 530 U.S. 103, 120 S.Ct. 2080, 147 L.Ed.2d 80, (2000) (plurality opinion), held that for purposes of judicial review a claimant does not waive an issue by failing to raise it in the Appeals Council. However, the Court specifically left open the question of whether an issue is waived if it is not raised in the administrative hearing. *Id.* at 107, 120 S.Ct. 2080. The first circuit later directly addressed this question and declined to extend Sims

to the administrative hearing. *Mills v. Apfel*, 244 F.3d 1, 8 (1st Cir.2001), *petition for cert. filed*, (Aug. 29, 2001) (No. 01–6108). The first circuit reasoned that applying *Sims* to the administrative hearing would "cause havoc" and undermine "the administrative process." *Id.* Whether such a terrible result would occur if *Sims* were applicable to administrative hearings in the SSA is a question this circuit or the Supreme Court may later address when directly confronted with the issue.

## CONCLUSION

Because the findings of the ALJ are supported by substantial evidence we AF-FIRM the ruling of the district court.