**Charles E. ABENDROTH,
Plaintiff–Appellant,**

v.

**Joanne B. BARNHART, Commissioner
of Social Security Administration,
Defendant–Appellee.**

No. 01–2696.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 11, 2001.

Decided Jan. 3, 2002.

Before BAUER, RIPPLE, and ROVNER, Circuit Judges.

## ORDER

Charles E. Abendroth suffers from lower back pain. He applied for disability benefits first in 1986 and again in 1996, but each time an Administrative Law Judge (ALJ) found him not disabled and therefore ineligible for benefits. He appealed only the second determination, which addressed his eligibility during the four-month period from August 28 to December 31, 1987. After the Appeals Council and the district court affirmed that determina-tion, he filed the present appeal. We affirm.

## BACKGROUND

Mr. Abendroth, who was born in 1941, has a history of back pain dating to at least 1974, when he was working full-time as a school janitor. In 1974 he first received surgery, a laminectomy, on his back. The record reflects no further serious back problems until 1982, when he was hospitalized in August. Mr. Abendroth left his job as a janitor in 1982, and did not work again until 1990. Mr. Abendroth's problems worsened after his 1982 injury. After tests showed herniated discs, he underwent a second back surgery in 1985. Mr. Abendroth then was referred to a rheumatologist, Dr. Mark Stern, who diagnosed him with "multifactorial back pain" and epicondylitis ("tennis elbow").

Mr. Abendroth first applied for disability benefits in August 1986. After reviewing Mr. Abendroth's application and holding a hearing, the ALJ analyzed Mr. Abendroth's claim under the mandatory five-step process, see 20 C.F.R. § 404.1520, and determined that Mr. Abendroth was not disabled because he had the residual functional capacity to work at sedentary jobs that would allow him to alternate between sitting and standing. Mr. Abendroth did not appeal the decision.

After being denied disability benefits, Mr. Abendroth continued to experience back pain. He underwent spinal surgery twice in 1989 and once in 1993. In spite of his pain, Mr. Abendroth handled an assortment of part-time jobs from 1990 to 1995. In 1995, however, he stopped working altogether.

In 1996 Dr. Stern, who was still treating Mr. Abendroth, prepared a report on Mr. Abendroth's condition at the request of Mr. Abendroth's lawyer. The report not-

ed that Mr. Abendroth suffered from degenerative disc disease, a history of back surgery, and a history of herniated spinal discs. Dr. Stern stated that he did not "believe that [Mr. Abendroth] would be able to pursue active work" even with frequent rest breaks. The doctor further stated that he "would expect" that Mr. Abendroth's physical impairments would cause him to miss "more than two or more [sic]" days of work per month. The report also stated that "[Mr. Abendroth's] lumbar situation really has not changed in the last 10 years since I have known him and these questions ... apply to August 29th of 1987 as well as the present day."

Also in 1996 Mr. Abendroth filed a second claim for disability benefits alleging that he became disabled in 1982 and seeking benefits through December 31, 1987, when his eligibility for benefits expired. In his application, Mr. Abendroth submitted medical evidence from 1982–1996, including some of the same evidence he presented with his first application. In 1997 the ALJ assigned to the case held a hearing at which Mr. Abendroth, his wife, and a vocational expert testified.

The ALJ issued a two-page opinion denying benefits. The opinion stated that the denial of Mr. Abendroth's first claim was *res judicata* through August 28, 1987. Mr. Abendroth's present claim was therefore limited to the four-month period between August 28, 1987, and December 31, 1987. The ALJ went on to state that Mr. Abendroth had provided no medical evidence to show that he became disabled during that four-month span, and that Mr. Abendroth had the same residual functional capacity for sedentary work that he possessed on August 28, 1987. Turning to the evidence, the ALJ found that Mr. Abendroth's current testimony was less credible than the testimony he had presented in connection with his first claim,

because the testimony he gave in 1987 concerning his first claim was more proximate in time to the four months at issue. The ALJ also suggested that the 1997 testimony was unreliable because Mr. Abendroth erroneously testified that he had not worked since 1987. The ALJ also stated that the evidence did not support Dr. Stern's opinion that Mr. Abendroth's condition had not changed in ten years.

The Appeals Council denied Mr. Abendroth's request for review, making the ALJ's decision the final determination of the Commissioner of Social Security. Mr. Abendroth then appealed to the district court, and both parties consented to review by a magistrate judge. *See* 28 U.S.C. § 636(c). The magistrate judge concluded that substantial evidence supported the ALJ's determination, and accordingly upheld the Commissioner's judgment. Mr. Abendroth appeals.

## ANALYSIS

### I. Sufficiency of the evidence

■ Mr. Abendroth's counsel contended at oral argument that *res judicata* does not bar us from reexamining Mr. Abendroth condition as of August 28, 1987, because the opinion issued by the ALJ in his first claim did not address whether Mr. Abendroth could work on a "sustained" basis. Ability to work on a "sustained" basis is part of the definition of residual functional capacity to work. *See* 20 C.F.R. § 404.1545(a)-(b). According to counsel, we may now consider Mr. Abendroth's ability to work on a "sustained" basis, and thus his residual functional capacity, because the issue was not previously raised. We disagree. *Res judicata* bars relitigation of issues from a first claim during a second claim. *See Groves v. Apfel*, 148 F.3d 809, 810 (7th Cir.1998); *see also Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1232–33 (6th Cir.1993).

The first opinion, though it did not use the phrase "sustained basis," thoroughly discussed Mr. Abendroth's residual functional capacity. Thus, *res judicata* bars us from reexamining Mr. Abendroth's residual functional capacity as of August 28, 1987, and to succeed Mr. Abendroth must prove that his condition deteriorated to the point of disability between August 28 and December 31, 1987; *see Groves*, 148 F.3d at 810; *Casey*, 987 F.2d 1230.

■ The ALJ found that Mr. Abendroth did not prove that he became disabled, and we must determine whether substantial evidence supported that decision. *See Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Substantial evidence requires "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Kepple v. Massanari*, 268 F.3d 513, 516 (7th Cir.2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 402, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). We examine the entire record, but do not "reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute our own judgment for that of the Commissioner." *Id.* The ALJ found that there was no evidence that Mr. Abendroth became disabled during the relevant four months. Mr. Abendroth's only potentially relevant evidence was his testimony to the ALJ that his condition was worse in 1996 than in 1987, and Dr. Stern's report stating that Mr. Abendroth's condition had not changed between 1996 and August 1987. Given the absence of evidence from the relevant time period, the ALJ's decision was supported by substantial evidence. *See, e.g., Casey*, 987 F.2d 1230 (holding that claimant previously adjudicated not disabled failed to show that she had become disabled when she provided no evidence from the relevant four months).

## II.  Adequacy of the ALJ's Opinion

■ Mr. Abendroth also attacks the adequacy of the ALJ's explanation for the opinion. For this court to affirm a denial of benefits, the ALJ must "articulate" the reasons for a decision at "some minimum level." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir.2001). This means that the ALJ "must build an accurate and logical bridge from [the] evidence to [the] conclusion." *Id.* Although the ALJ need not address every piece of evidence, we must be able to discern the ALJ's reasoning. *Id.* Here, the ALJ's ruling comprises only two pages of text, but the ALJ's rationale is discernible.

Mr. Abendroth argues that the ALJ's decision was insufficient because it did not delineate the first four steps of the five-step analytical process for determining whether an individual is disabled. *See* 20 C.F.R. § 404.1520. But the ALJ could not reach step five without proceeding through the first four steps. Moreover, all five steps were extensively discussed in the denial of Mr. Abendroth's first claim, on which the ALJ relied heavily. We will not remand a case to an ALJ "in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir.1989). Description of the first four steps would not have altered the fact that Mr. Abendroth presented no evidence of a *change* in his condition during the relevant four-month period.

■ Mr. Abendroth next argues that the decision is insufficient because the ALJ did not list Mr. Abendroth's impairments. Mr. Abendroth argues that because the ALJ never specified what impairments he reviewed, this court cannot know whether the ALJ properly considered all of the alleged impairments. The ALJ's decision, however, states that there

is no evidence that Mr. Abendroth's condition changed after his first denial of benefits. If Mr. Abendroth's condition is unchanged, then his impairments are the same as those in the first decision.

■ Mr. Abendroth also asserts that there is no indication that the ALJ reviewed the record from his earlier disability claim. An ALJ must consider all the relevant evidence. *See Herron v. Shalala,* 19 F.3d 329, 333 (7th Cir.1994). The first decision, however, is *res judicata.* Although evidence from the first claim is admissible, *see Groves,* 148 F.3d at 810, *res judicata* bars the ALJ from redetermining whether Mr. Abendroth was disabled as of August 28, 1987. Moreover, the ALJ stated twice in his decision that he reviewed the record closely. There is every indication, then, that the ALJ sufficiently reviewed the record.

■ Mr. Abendroth next contends that we should reverse because the ALJ did not explain his finding that a 1996 report by Dr. Stern, Mr Abendroth's treating rheumatologist, was not supported by the record. According to Mr. Abendroth, two statements from Dr. Stern's report support his claim and thus should have been addressed. First, Mr. Abendroth points out Dr. Stern's statement that Mr. Abendroth's "lumbar situation" was the same on August 29, 1987, as in 1996. Second, Mr. Abendroth contrasts Dr. Stern's statement that he "would expect" Mr. Abendroth to miss "more than two or more" days of work per month with a vocational expert's testimony that an employer would permit no more than one absence per month. A treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if well-supported by medical findings and not inconsistent with other substantial evidence. *See Clifford,* 227 F.3d at 870. Although the ALJ should have discussed his reasoning, *see id.* at 871, the record does not support Dr. Stern's claim that Mr. Abendroth's condition was unchanged. For example, Mr. Abendroth contradicted Dr. Stern's claim when he testified to the ALJ during his 1997 hearing that his condition had deteriorated since 1987. Moreover, Dr. Stern's report that Mr. Abendroth's condition had not changed between 1987 and 1996 does not support Mr. Abendroth's contention that he worsened to the point of disability during the relevant four months. Once the ALJ determined that Dr. Stern's report was not credible evidence of Mr. Abendroth's condition, the ALJ also did not need to accept Dr. Stern's expectation that Mr. Abendroth would be absent more than two days per month.

## CONCLUSION

The ALJ's decision was supported by sufficient evidence and was adequately comprehensive under the circumstances. AFFIRMED.