**Marvin P. MORRIS, Plaintiff–Appellant,**

v.

**Jo Anne B. BARNHART, Commissioner of Social Security Defendant–Appellee.**

**No. 01–3521.**

United States Court of Appeals, Seventh Circuit.

Argued March 5, 2002.

Decided May 2, 2002.

242

Before COFFEY, EASTERBROOK, and MANION, Circuit Judges.

## ORDER

Marvin Morris appeals an administrative law judge's decision denying him disability insurance benefits on the ground that he remained able to perform his past work as a "telecommunicator" despite complaints of numbness in his fingers. Because Morris's objections to the ALJ's written opinion are without merit, and because substantial evidence supports the ALJ's conclusion, we affirm.

## I. Background

Morris applied for disability benefits after resigning from his position as a telecommunicator with the Milwaukee Police Department in 1993. After a hearing, the ALJ determined that Morris suffered from several severe impairments but was not disabled. Morris sought judicial review, and a magistrate judge sitting by designation remanded the case for redetermination of Morris's ability to perform the telecommunicator job. The ALJ held a second hearing on remand.

Morris testified at both hearings, explaining that he worked as a police officer until a shoulder injury, which required

arthroscopic surgery, forced him to take disability retirement from the police force in 1988. Morris testified that his shoulder injury continues to cause weakness and constant moderate-to-severe pain in his right arm and shoulder, and that occasionally the pain radiates into his hand causing numbness in three fingers and limiting use of his right hand. He offered a decision from the police department's pension board noting his testimony at his 1988 pension hearing that he had "experienced some numbness in his right hand" since the surgery. In 1989 Morris took a civilian job answering telephones at the Milwaukee Police Department's communications center. The center later implemented a system that required operators to type information received from callers, and soon, Morris testified, he was required to type constantly, sometimes answering 500 calls in a day. Morris explained that the typing bothered his shoulder and caused numbness in his fingers that limited his ability to touch-type. He left the job voluntarily in 1993, explaining in his letter of resignation that "too much typing" caused his fingers to "go numb late in the day."

Morris reported the numbness to two doctors: Dr. Gregory VanWinkle, who treated Morris's shoulder injury, and consulting physician Dr. Christopher Evanich. Dr. VanWinkle, however, found Morris's sensation to be "normal" during a January 1995 examination, and opined in a September 1995 evaluation that Morris could perform both "simple grasping" and "fine manipulation" "repetitive[ly]" throughout an eight-hour work day. Similarly, Dr. Evanich, who examined Morris in 1994, observed that although Morris *complained* of numbness he *experienced* only intermittent paresthesia—an abnormal sensation, such as of burning, pricking, tickling, or tingling, *see Stedman's Medical Dictionary* 1316 (27th ed.2000)—in three fingers on

his right hand. Thus, Dr. Evanich concluded, Morris "should have no difficulty in handling and manipulating objects." Dr. Evanich further noted that Morris was able to pinch and grip with both hands without difficulty and demonstrated no deficiency in finger dexterity.

The ALJ also heard testimony from a vocational expert (VE), who testified that although a person with numbness in his fingers could not perform Morris's telecommunicator job, a person with the capacity for grasping and manipulation specified in Dr. Evanich's and Dr. VanWinkle's reports could perform the job.

The ALJ, in a written opinion acknowledging that Morris complained of pain and numbness and that his job required typing, relied on the medical and vocational evidence to conclude that Morris was not disabled because he could perform his past relevant work as a telecommunicator. *See, e.g., Knight v. Chater,* 55 F.3d 309, 313 (7th Cir.1995). The district court affirmed that decision, and Morris appeals.

## II. Analysis

█ Morris first contends that the ALJ ignored evidence of numbness from both doctors. Contrary to Morris's assertions, however, neither doctor corroborated his claims; their reports reflect that Morris *complained* of numbness but demonstrated no deficiency in dexterity. Rather than ignoring this medical evidence the ALJ relied on it—particularly on Dr. VanWinkle's opinion that Morris could perform repetitive fine manipulations for eight hours at a time. Indeed, the only source of evidence on numbness was Morris's own testimony, which the ALJ acknowledged in his opinion. The ALJ was not required to specifically mention the pension board's decision or Morris's letter of resignation in his opinion, because they merely reiterate

rather than substantiate Morris's claims. *See, e.g., Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir.2001) (ALJ's opinion need not address every piece of evidence).

■ Second, Morris asserts that the ALJ failed to discuss "contrary" evidence concerning the nature of his shoulder injury and certain testimony from the VE. The ALJ's opinion describes Morris as suffering from a torn rotator cuff and shoulder impingement syndrome, and notes that the injury causes pain, mild sclerosis, and decreased joint space, strength, and range of motion. Morris's only objection to this assessment is that the ALJ failed to note that Dr. VanWinkle described the condition in one of his reports as "rotator cuff tendinitis." But Morris does not explain why this omission is significant, and we do not think it is. Nor are we persuaded by Morris's argument the ALJ failed to sufficiently "discuss" his testimony concerning arm and shoulder pain. The ALJ acknowledged Morris's complaints of pain but concluded that the pain was not disabling, noting that Morris's doctors had recommended only conservative treatment following his surgery and that no evidence showed Morris had treated the pain with any medications besides aspirin until 1997—four years after he allegedly became disabled. This reasoning is entirely appropriate, *see, e.g., Donahue v. Barnhart,* 279 F.3d 441, 444 (7th Cir.2002) (evidence that claimant "relied for pain control on over-the-counter analgesics" supports conclusion that pain is not disabling); *Powers v. Apfel,* 207 F.3d 431, 435–36 (7th Cir.2000) (reliance on drugs not intended to treat severe pain suggests claimant may be exaggerating condition), and Morris does not contend that the facts on which it is based are inaccurate. Finally, the VE's testimony that someone with numbness in his hands would be unable to perform Morris's old job became irrelevant once the ALJ concluded that Morris did *not* suffer from numbness. The ALJ thus was not required to discuss this evidence. *See Dixon,* 270 F.3d at 1176 (ALJ need not address all evidence); *Clifford v. Apfel,* 227 F.3d 863, 871 (7th Cir.2000) (ALJ must consider all *relevant* evidence).

Morris next challenges the ALJ's characterization of his testimony that he answered 500 calls in one day as "not entirely credible." But Morris does not explain why this determination is "flawed" or even what effect it had on the ALJ's disability determination. On the contrary, Morris suggests that it is irrelevant, and we agree. So long as Morris was required to type "constantly"—and the ALJ did not find his testimony on this point incredible—it does not matter whether Morris handled 5 long calls or 500 short ones.

■ Morris's final argument—that the ALJ's decision is not supported by substantial evidence—also is unavailing. The ALJ based his decision on medical evidence from Drs. Evanich and VanWinkle that Morris's finger dexterity remained intact, and on the VE's testimony that a person having the limitations both doctors specified would be able to perform Morris's old job. This constitutes substantial evidence. *See, e.g., Kepple v. Massanari,* 268 F.3d 513, 516 (7th Cir.2001) (ALJ's decision supported by medical evidence and testimony of vocational expert was based on substantial evidence); *Zurawski v. Halter,* 245 F.3d 881, 887 (7th Cir.2001) (substantial evidence is relevant evidence that a reasonable person might accept as an adequate basis for a conclusion). Accordingly, the district court's judgment is AFFIRMED.