**Edward STEIN, Plaintiff–Appellant,**

v.

**Louis W. SULLIVAN,
Defendant–Appellee.**

**No. 89–1749.**

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 7, 1989.

Decided Dec. 20, 1989.

As Amended Dec. 21, 1989 and
Jan. 9, 1990.

Frederick J. Daley (argued), Chicago, Ill., for plaintiff-appellant.

William T. Clabault, AUSA Asst. U.S. Atty., Office of the U.S. Atty., and Felisia A. Wesson (argued), Dept. of Health and Human Services, Region V, Chicago, Ill., for defendant-appellee.

Before WOOD, Jr., COFFEY and EASTERBROOK, Circuit Judges.

COFFEY, Circuit Judge.

Edward Stein appeals the determination of the Department of Health and Human Services Appeals Council (Council) that he was not entitled to Social Security disability benefits until October 9, 1981. The district court affirmed the decision of the Secretary, finding that the decision was supported by substantial evidence in the record. We reverse and remand this case for further proceedings.

On January 28, 1980, Stein filed his first application for Social Security disability benefits alleging an onset date of April 15, 1979. His application was denied initially and again upon reconsideration. On October 2, 1980, Stein re-applied for benefits asserting an onset date of September 23, 1978. That claim was also denied, and Stein did not appeal.

On October 22, 1981, Stein filed the application presently before this court alleging an onset date of September 15, 1978. The claim was also denied initially and upon reconsideration. Thereafter, a hearing was held before an Administrative Law Judge (ALJ) who denied the claim. The denial by the ALJ was upheld by the Appeals Council. Stein appealed the denial of benefits to the district court. The parties filed cross motions for summary judgment. In an order of January 31, 1985, Judge Getzendanner remanded this case to the Secretary for proper determination under the sequential analysis [1] used to determine disability under the Social Security Act (Act).

---

1. Social Security regulations prescribe a sequential inquiry to be followed in determining whether a claimant is disabled. The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment 'severe?' (3) Does the impairment meet or exceed one of the list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claim- ant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops inquiry and leads to a determination that the claimant is not disabled. *Zalewski v. Heckler,* 760 F.2d 160, 162 n. 2 (7th Cir.1985) (citing 20 C.F.R. § 404.1520).

On remand, a second hearing was held before an ALJ. In a decision dated October 1, 1986, the ALJ recommended that the two previous applications be reopened and that Stein be awarded benefits beginning September 23, 1978. In its decision of April 15, 1987, the Appeals Council refused to reopen the previous applications and awarded benefits as of October 9, 1981. Stein's appeal was reinstated in the district court challenging the disability onset date. The parties filed cross motions for summary judgment. The district court entered judgment in favor of the Secretary, and Stein filed this appeal.

Stein was born on November 9, 1936. Stein's history of emotional problems dates back to 1950 when he was a high school student. Following high school, Stein attended Wright Junior College for two years.

In 1959, Jewish Vocational Services (JVS) placed Stein in a position as a statistician. Stein stayed in that position for seven years. In 1967, the Illinois Department of Vocational Rehabilitation (DVR) sponsored Stein in a computer training program. Later in 1967, the DVR placed Stein in a position as a computer operator with the Illinois Department of Labor. Initially, Stein was required to stock supplies and to operate a sorter, collator, and interpreter using punched IBM cards—tasks which permitted him to work independently. With the help of a sympathetic and supportive supervisor, Stein was relatively successful in his position. Stein received two promotions that resulted in increased responsibility.

Stein's supervisor retired and Stein was transferred to the computer room when his position became automated. Stein had a new supervisor and was required to interact with his co-workers. Stein's job performance began to deteriorate because he had difficulty getting along with co-workers and his supervisor. Stein tried to avoid his co-workers by performing menial tasks in isolation; however, those actions resulted in conflicts with his supervisor. His performance was also adversely affected by the change to a 12–hour workday three days per week. Stein received two disciplinary suspensions of three days each and was eventually terminated. Stein's last day of work was September 23, 1978, when he was placed on 30–day suspension prior to his dismissal.

After his discharge, Stein collected unemployment compensation and attempted to find other employment by interviewing for between forty to sixty positions from November 1978 to July 1979. In addition, Stein initiated a civil lawsuit to regain his position with the Department of Labor that was ultimately unsuccessful.

Records of the psychologists who treated Stein after his dismissal indicate that he experienced an acute stress response to his termination. Stein returned to JVS and was treated by Ivan Lippitz, Ph.D. Lippitz noted that Stein subsisted as a lonely, isolated, depressed, and angry person. Lippitz also observed in a letter of February 21, 1980, that "the pursuit of competitive employment would be unproductive as [Stein's] personal needs predominate." Lippitz also stated that certain peculiar behaviors and mannerisms of Stein were so prominent that JVS would not refer Stein for job interviews.

Bonnie A. Rudolph, Ph.D., also treated Stein during 1979. She conducted various tests to determine his aptitudes and abilities. A report of June 13, 1979, presented her findings. The Bender Motor Gestalt Test indicated that Stein showed signs of perceptual motor deficit. Stein's scores on the Wechsler Adult Intelligence Scale (WAIS) (full scale IQ 117, verbal IQ 130, performance IQ 97) placed Stein in the bright normal range of intelligence. Rudolph observed that the point discrepancy between Stein's verbal and performance scores also suggested perceptual motor deficit. In addition, Rudolph noted that Stein's anxiety about his failure to master tasks resulted in further deterioration of his performance. She concluded that the anxiety over failure would surface in his attempts to obtain employment and that the barriers to Stein's re-employment were emotional.

In a report of June 15, 1979, Rudolph concluded that Stein was experiencing acute stress response syndrome as a result of his termination. Rudolph reported that Stein was anxious and depressed and that he had thoughts of suicide and homicide. She also indicated that Stein manifested several peculiar mannerisms and gestures that would limit his success in an interview. Finally, Rudolph stated that Stein's job search efforts were mainly coping activity.

Beginning in October 1980, Stein began to attend daily sessions of the Refocus Program at Evanston Hospital. Progress reports from the program indicate that Stein was monitored for suicide potential, and an entry of November 11, 1980, stated that Stein was not ready for competitive employment. Stein stayed in the Refocus Program until February 1981. At that point, the reports noted that some progress had been made in the treatment of Stein's emotional problems.

From February 1981 to October 1981 Stein participated in a CETA business training program. Stein attended classes focusing mainly on clerical skills for thirty-five hours per week. After completing the program, Stein was placed in several positions and was discharged for failure to get along with co-workers and his supervisors. Following the CETA training, Stein participated in four other vocational programs and was dismissed from each without completing the program and without functioning at even a minimum level of competence in either a sheltered or competitive work environment.

David Price, Ph.D., was the psychologist who treated Stein in December 1981 following the CETA training. Price was still treating Stein at the time of the second hearing before the ALJ. Price testified at the hearing that Stein could not function in a competitive work environment as of September 1978. A report prepared by Price, dated July 20, 1983, reasserted that Stein was not able to work as of September 1978. Price also stated in another report dated July 17, 1984, that Stein's vocational capacities had gradually but definitely declined over the six-year period since his discharge and that Stein was not employable.

■ There is no dispute that Stein is disabled within the meaning of the Social Security Act. The dispute in this case concerns the onset date of his disability. The three factors considered by the ALJ and the Council in determining an onset date for a disability of non-traumatic origin are: (1) the allegations of the applicant; (2) the work history of the applicant; and, (3) the medical and other relevant evidence. *Pugh v. Bowen*, 870 F.2d 1271, 1274 (7th Cir. 1989); *Lichter v. Bowen*, 814 F.2d 430, 434 (7th Cir.1987). Stein alleges that he became disabled on September 23, 1978, the last day he worked at the Department of Labor. The ALJ agreed with Stein's assertion and found that he became disabled on that date. The Council, however, determined that although the evidence indicated that Stein had a severe personality disorder prior to October 9, 1981, there was no evidence that he had an "impairment," as that term is defined in the Act, prior to that date or that Stein did not maintain the residual functional capacity to perform in his past relevant work as a computer operator. Therefore, the Council determined that Stein became disabled as of October 9, 1981, the date Stein completed the CETA program.

■ Where, as here, the correctness of the onset date established by the Secretary is challenged, the issue is whether there is substantial evidence in the record to support the date chosen by the Secretary, not whether an earlier date could have been supported. *Pugh*, 870 F.2d at 1278–79. Review in this case is limited to the final decision of the Secretary. The Secretary has delegated his authority to make final decisions to the Council; therefore, we review the decision of the Council rather than the decision of the ALJ. *Bauzo v. Bowen*, 803 F.2d 917, 921 (7th Cir.1986).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). In reviewing the findings of the Secretary, this court " 'may not decide the facts anew, reweigh the evidence, or substitute [its] own judgment for that of the Secretary' " *Burnett v. Bowen*, 830 F.2d 731, 734 (7th

Cir.1987) (quoting *Delgado v. Bowen,* 782 F.2d 79, 82 (7th Cir.1986)); however, "[appellate] review 'must be more than an uncritical rubber stamp.'" *Delgado,* 782 F.2d at 610 (quoting *Garfield v. Schweiker,* 732 F.2d 605, 610 (7th Cir.1984)). This court has "repeatedly emphasized that the Secretary's decision must be based on consideration of all relevant evidence and the reasons for his conclusion must be stated in a manner sufficient to permit an informed review." *Ray v. Bowen,* 843 F.2d 998, 1002 (7th Cir.1988) (citations omitted). "The Secretary may not select only that evidence that favors his ultimate conclusion; rather, he must articulate at some minimum level his analysis of the evidence in cases in which considerable evidence is presented to counter the agency's position." *Id.* (citations omitted). That is, the Council need not address each piece of evidence or all of the testimony separately, but the decision must be based on fair consideration of all of the evidence presented.

■ It is unclear from the Council's decision in this case whether it satisfied the requirement that all relevant evidence be considered. The Council's only reference to medical evidence focuses on one report prepared by Price and a portion of his testimony at the hearing. The balance of Price's hearing testimony, which was unfavorable to the Secretary's position, and a statement in another report prepared by Price that Stein had not been "work-ready" since 1978 were not addressed.

In addition, the Council makes no reference to the statements of Lippitz, a psychologist who treated Stein during the time at issue, that Stein could not work in a competitive environment and that based upon the predominance of his personal needs, the pursuit of employment would be unproductive. Similarly, the Council's decision fails to address either the evidence from Rudolph that Stein's emotional problems created barriers to his re-employment or the progress reports from the Refocus Program stating that Stein was not ready for competitive employment.

The time at issue in this case is the period from September 23, 1978, (the date Stein claims he was eligible) to October 9, 1981 (the eligibility date set by the Secretary). The notes and reports prepared by Stein's treating psychologists during that time would seem to be highly relevant to the question of whether Stein was disabled; however, that evidence is not addressed in the decision of the Council. Consequently, it is difficult to determine whether the Council fulfilled its obligation to consider all of the relevant evidence in establishing the onset date of Stein's disability.

Although the Council "need only minimally articulate [its] assessment of the evidence," *Pugh,* 870 F.2d at 1278, it has not adequately done so in this case. As this court noted in *Zblewski v. Schweiker,* "[i]n the absence of an explicit and reasoned rejection of an entire line of evidence, the remaining evidence is 'substantial' only when considered in isolation." 732 F.2d 75, 79 (7th Cir.1984). The failure of the Council to specifically discuss or analyze any of the medical evidence from Stein's treating psychologists prepared during the time period at issue requires that the judgment of the district court be reversed with direction to discuss, analyze, and make specific findings concerning Stein's illness and to redetermine the disability onset date in light of all of the relevant evidence.