**Virginia L. CREASY, Plaintiff–Appellant,**

v.

**Jo Anne B. BARNHART,\* Commissioner of Social Security, Defendant–Appellee.**

No. 01–1443.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 30, 2002.

Decided Feb. 27, 2002.

---

\* Pursuant to Fed. R.App. P. 43(c), Jo Anne B. Barnhart is substituted as a party for Larry G. Massanari.

Before MANION, DIANE P. WOOD, and EVANS, Circuit Judges.

### ORDER

Virginia Creasy suffers from numerous ailments of varying severity, including recurring strokes, chronic lung disease, joint pain, anxiety, and depression. She stopped working and applied for disability insurance benefits and supplemental security income in August 1993. An Administrative Law Judge determined that Creasy's medical condition prevented her from returning to her past employment, but that she nevertheless could perform certain types of unskilled sedentary work until she reached age 50. Upon reaching that age, the ALJ concluded, Creasy would become eligible for disability benefits as a result of being placed in a different age category for purposes of the occupational grids. Creasy challenged these findings, claiming she was disabled at age 46, but after she failed to file a brief in the district court, Judge Tinder affirmed the Commissioner's final decision. On appeal Creasy generally argues that the ALJ violated her procedural due process rights, and that substantial evidence does not support the ALJ's determination regarding her eligibility date for disability. We affirm.

### BACKGROUND

Creasy graduated from high school in 1965, and over the next 28 years held a variety of jobs including waitress, bartender, factory laborer, and construction worker. During this period Creasy's work demanded a substantial amount of physical activity, including constant walking, standing, bending, reaching, and frequent lifting of heavy items. Creasy alleges that her disabling condition first began to manifest itself in 1985, when she suffered a head trauma in a car accident. After the accident she complained of frequent headaches and suffered from three strokes associated with her head injury. Her strokes were accompanied by seizures and followed by postictal Todd's palsy – a temporary partial paralysis of one side of her body, never lasting more than a few days. Her most recent documented stroke, occurring in July 1993, required her to be hospitalized for four days. Since then, her strokes and seizures have been controlled with medication.

Despite this history of headaches and strokes, Creasy continued to work until August 1993, when she says that three additional medical complications impaired her ability to work. First, Creasy complained of difficulty breathing. She suffered from chronic lung disease, due primarily to her long smoking history (one to five packs of cigarettes a day for 35 years). In April 1993 she was diagnosed with emphysema, and in August 1993 she was hospitalized with acute bronchitis and exacerbation of chronic pulmonary insufficiency (COPD). Second, Creasy complained of swelling in her hands, arms, and legs caused by rheumatoid arthritis. Although her medical records do not support this diagnosis, in April 1993 her treating physician did diagnose chronic arthralgia rather than rheumatoid arthritis. Third, Creasy complained of various emotional problems, such as anxiety and depression. She was diagnosed with major depression in August 1993, and was hospitalized in January 1994 and June 1996 for treatment of her anxiety and depression. Her treating physicians concluded that Creasy's complaints about other symptoms, such as headaches and muscular jerking, also had a psychiatric basis related to her depression. In addition, the doctors diagnosed somatoform disorder, a psychological condition that causes Creasy to exaggerate symptoms affecting her body (leading one doctor to characterize her descriptions of pain as "flamboyant").

After Creasy's employment ended in August 1993, she worked around the house, particularly as the primary caregiver for her three young grandchildren, who have lived with Creasy since 1990, and whom Creasy formally adopted in 1995. In response to a questionnaire from the Disability Determination Office regarding her daily activities, Creasy reported in late 1993 that she swept, dusted, made beds, and cooked meals for the three children on a daily basis, though her physical condition required more time for these tasks.

In a January 1994 letter, Creasy's primary care physician, Dr. J. Brooks Dickerson, concluded that Creasy was not "physically or emotionally capable of performing any gainful activity" and stated that he considered her "totally disabled." In October 1995, at the request of the ALJ, Dr. Dickerson assessed Creasy's residual physical functional capacity and stated that Creasy was "physically and emotionally disabled from any type of gainful employment." He conceded, however, that she could perform some sedentary work in the future if she stopped smoking and received long-term psychological counseling and vocational rehabilitation. Eight months later, in response to additional questions posed by the ALJ, Dr. Dickerson concluded that Creasy's pulmonary disease precluded her from any activity involving physical exertion or lifting, and required that her work environment be free of significant weather change or dust exposure. In an attempt to clarify his earlier assessments of Creasy's disability status, Dr. Dickerson explained that with vocational training he believed that Creasy could perform "a type of sedentary job that is not very stressful or intellectually demanding." He also suggested that getting Creasy to return to work "would have a positive effect on her emotional state."

The ALJ conducted two oral hearings in 1995, and closed the administrative record in February 1997. In September 1997 the ALJ issued a decision, applying the standard five-step analysis used to determine disability. See 20 C.F.R. §§ 404.1520, 416.920; Young v. Sec'y of Health & Human Servs., 957 F.2d 386, 389 (7th Cir. 1992). The ALJ concluded that Creasy was unemployed (step 1) and suffered from severe impairments (step 2). The ALJ then found that her impairments

were not per se disabling (step 3), but they did prevent her from performing her past work (step 4). Nevertheless, based on Dr. Dickerson's assessment, the ALJ found that Creasy possessed the residual functional capacity to perform sedentary work. Accordingly, the ALJ submitted interrogatories to a vocational expert (VE), inquiring whether any sedentary work would be appropriate for an individual of Creasy's age, education, and work experience. Relying on the limitations identified by Dr. Dickerson, the ALJ asked the VE to identify only those jobs that would not be very stressful or intellectually demanding and would not present environmental conditions that could exacerbate Creasy's lung disease. In response the VE identified over 32,000 jobs (based on information published in "Employment Statistics Quarterly"),[1] the majority of which would be performed in an office or clean air environment. The ALJ therefore concluded that Creasy was ineligible for disability benefits until she reached age 50 (step 5).[2]

After the Appeals Council denied her request for review, Creasy filed a complaint in the district court alleging that the ALJ's findings of fact and conclusions regarding the onset date of her disability were not supported by substantial evidence. The district court set a briefing schedule, and subsequently granted Creasy a 30–day extension. Despite this extension, Creasy failed to submit a brief. The court was therefore left with no submissions from Creasy other than a skeletal two-page complaint upon which to base its decision. In a short, four-paragraph decision, the court affirmed the Commissioner's final decision.

## DISCUSSION

Creasy's appeal raises two general issues: first, whether the ALJ violated Creasy's due process rights; and second, whether the ALJ's findings are supported by substantial evidence.

### I. Due Process

■ Although Creasy was represented by counsel throughout the administrative process and in the district court, she now claims for the first time that she was denied due process of law during the administrative proceedings. The complaint she filed in district court never mentions due process, and as we noted earlier, she failed to file any kind of brief in that court. Whatever the merits of this due process argument, Creasy waived the issue by failing to first present it to the district court. *See Schoenfeld v. Apfel,* 237 F.3d 788, 793 (7th Cir.2001); *Shramek v. Apfel,* 226 F.3d 809, 811 (7th Cir.2000).

### II. Substantial Evidence

Creasy's failure to file a brief in the proceedings below calls into question whether she has adequately preserved any issue for appeal. An extremely generous reading of her complaint, however, preserves the limited issue whether substantial evidence supports the ALJ's finding regarding Creasy's disability onset date. Substantial evidence is "such relevant evidence as a reasonable mind might accept

---

1. Cashier (13,621); information clerk (1,206); telephone operator (1,906); production inspector (13,345); assembler (2,150).

2. Social Security regulations set forth an occupational grid for sedentary work that requires a disability finding for individuals closely approaching advanced age (50–54 years old) who are high school graduates

without transferable work skills, whereas younger individuals with identical education levels and skills would be found not disabled. *Compare* 20 C.F.R. Part 404, Subpart P, App. 2, Table No. 1, Rule 201.12. *with* 20 C.F.R. Part 404, Subpart P, App. 2, Table No. 1, Rule 201.21. Accordingly, the ALJ found Creasy disabled as of her fiftieth birthday.

as adequate to support a conclusion." *Kepple v. Massanari*, 268 F.3d 513, 516 (7th Cir.2001). Throughout her appellate brief Creasy raises variations of the substantial evidence claim, but none of these arguments have any merit.

■ First, Creasy claims that the ALJ based his decision on an incomplete and therefore defective record. She claims that the record is deficient because it lacks her live testimony, that of her corroborating witnesses, and cross-examination of medical and vocational experts. Because the record does not contain additional evidence regarding her condition, she argues that any conclusions based on it are unsupported. But while it is true that an ALJ has a duty to develop a "full and fair record," *Howell v. Sullivan*, 950 F.2d 343, 348 (7th Cir.1991), the ALJ is entitled to assume that an applicant represented by counsel "is making his strongest case for benefits," *Glenn v. Sec'y of Health & Human Servs.*, 814 F.2d 387, 391 (7th Cir. 1987). In this case, the ALJ based his decision upon review of a record replete with medical reports and written statements submitted by Creasy and her family. Many of these documents contained descriptions of Creasy's symptoms and condition. Additionally, the ALJ gave Creasy and her attorney numerous opportunities throughout the proceedings to supplement the record with information they deemed necessary for a fair consideration of Creasy's disability claim. Accordingly, a full and fair record was compiled.

■ Creasy next argues that the district court and the ALJ erred because there was sufficient evidence for the ALJ to determine that she was disabled before turning 50. Creasy misunderstands the nature of this court's review. Whether or not an earlier onset date could have been chosen is irrelevant. When a claimant challenges the onset date established by the ALJ, the issue is whether there is substantial evidence in the record to support the date chosen by the ALJ, "not whether an earlier date could have been supported." *Stein v. Sullivan*, 892 F.2d 43, 46 (7th Cir.1989). Creasy raises nothing to disturb the ALJ's conclusion that she became disabled at age 50.

■ Finally, Creasy claims that substantial evidence does not support the ALJ's findings, in particular his analysis under steps two and five of the sequential evaluation, because the findings ignore the medical evidence of her disabling condition as presented by her treating physician, Dr. Dickerson. Creasy's challenge of the ALJ's step two analysis is puzzling because all parties agree that Creasy suffers a "severe" impairment. Without a finding of a severe impairment, the ALJ would not have proceeded through the remainder of the sequential analysis. As for the ALJ's step five analysis, Creasy also claims that the ALJ impermissibly substituted his own judgment for that of her treating physician, Dr. Dickerson. Although Dr. Dickerson may have concluded that Creasy was "totally disabled," the ultimate decision of disability rests with the ALJ, after review of the entire record. *See Diaz v. Chater*, 55 F.3d 300, 306 n. 2 (7th Cir.1995). Furthermore, Dr. Dickerson's assessments regarding Creasy's residual functional capacity were not entirely consistent. In one report, for example, Dr. Dickerson stated that Creasy was "physically and emotionally disabled from any type of gainful employment," yet elsewhere went on to concede that Creasy could perform sedentary work with some limitations. Because Dr. Dickerson's RFC assessment suggested that Creasy could perform "a type of sedentary job that is not very stressful or intellectually demanding" subject to certain environmental controls, substantial evidence supports the ALJ's conclusion that Creasy could perform sedentary work sub-

ject to the limitations that Dr. Dickerson identified.

## CONCLUSION

For the forgoing reasons, the ALJ's decision finding Creasy not disabled prior to reaching age 50 is AFFIRMED.