Tony D. WALKER, Plaintiff–Appellant,

v.

Sharon K. ZUNKER, et al.,
Defendants–Appellees.

No. 01–2895.

United States Court of Appeals,
Seventh Circuit.

Submitted Feb. 25, 2002.*

Decided Feb. 27, 2002.

---

* After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a)(2).

Before CUDAHY, ROVNER, and EVANS, Circuit Judges.

### ORDER

Tony Walker appeals the entry of summary judgment against him in his suit under 42 U.S.C. § 1983 against Wisconsin prison officials for denial of medical treatment. We affirm.

Walker was a prisoner at Waupun Correctional Institution in Wisconsin when on October 22, 1995, he fell while walking up a staircase in waist restraints. Walker's fall injured his lower back and left shoulder. Because of his injuries, he went to see a prison physician, who diagnosed him with arthritis of the lumbar spine and noted that Walker's range of motion in his back was somewhat limited. The doctor treated Walker by prescribing pain medication and physical therapy, as well as giving Walker an "egg-crate" mattress, an abdominal binder, and extra pillows. Walker was also given a low-tier/low-bunk/do-not-double assignment due to his health problems.

In July 1999 Walker was transferred to Green Bay Correctional Institution (GBCI). During his orientation at the prison. Walker told medical staff that he was "ok." but that he "fell in the cell hall at Waupun and I have some arthritis in my back." Later that month Walker received an examination from defendant Dr. Metodio Reyes, a prison staff physician, who denied Walker's requests for an egg-crate mattress. Reyes told Walker that egg-crate mattresses are not used to treat back pain. Reyes did, however, acknowledge that Walker had received knee surgery in 1989 and thus ordered him to be placed in a lower bunk.

Walker's back continued to hurt, so Reyes examined him a second time in late July. At that visit Walker requested a single cell. Reyes denied the request, stating that Walker did not have a medical reason to receive a single-cell assignment.

Unhappy with his medical treatment. Walker wrote letters of complaint to defendants Daniel Bertrand, warden of GBCI, and Wendy Bruns, an inmate complaint examiner at GBCI. When the defen-

dants did not act on his complaints, Walker filed suit against Bertrand, Bruns, Reyes, Jeananne Greenwood (GBCI's manager of health services). Jeffrey Jaeger (GBCI's security director), Sharon Zunker (director of Wisconsin's Bureau of Health Services), the Wisconsin Department of Corrections, and the Wisconsin Bureau of Health Services. Walker alleged that his deprivation of medical treatment by the defendants amounted to cruel and unusual punishment. Walker also moved for leave to proceed *in forma pauperis,* which the district court denied with prejudice because Walker's claim reflected merely dissatisfaction with his treatment and did not rise to the level of cruel and unusual punishment.

Walker then moved for reconsideration under Fed.R.Civ.P. 59(e), arguing that the court had misinterpreted his complaint and that he had in fact alleged receiving no treatment at all for his back. In light of Walker's explanation, the district court vacated its earlier order, granted Walker's motion for reconsideration, and granted his motion for leave to proceed *in forma pauperis.* The court's order also dismissed the Wisconsin Department of Corrections and Bureau of Health Services as defendants, commenting that they "cannot be held personally responsible for failure to treat petitioner and thus cannot be held liable for damages under § 1983."

The court granted the defendants' subsequent motion for summary judgment, concluding that Walker failed to establish that he had a serious medical condition. According to the court. Walker's statement to medical staff that he was "ok" and the fact that he was able to play basketball at GBCI on at least one occasion suggested that his back pain was not severe.

■ We review the district court's grant of summary judgment *de novo,* construing all facts and drawing all reasonable inferences from the record in the light most favorable to Walker. *Sherrod v. Lingle,* 223 F.3d 605, 610 (7th Cir.2000). To survive a motion for summary judgment, however, Walker must demonstrate that a genuine issue of material fact existed. *See Chapman v. Keltner,* 241 F.3d 842, 845 (7th Cir.2001).

■ Walker first argues that his back pain was sufficiently serious that the deprivation of care amounted to cruel and unusual punishment by prison officials. To state a claim for cruel and unusual punishment arising from improper medical care, a prisoner must "allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). A medical condition is serious when "the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Gutierrez v. Peters,* 111 F.3d 1364, 1373 (7th Cir.1997). Serious conditions, for example, include those that "significantly affect an individual's daily activities" or cause "chronic and substantial pain." *Id.* (quoting *Estelle,* 429 U.S. at 105–6, 97 S.Ct. 285). Walker argues that his medical condition was serious, but intermittent, affecting him at least once per week. Walker's evidence consists of his own affidavit that his pain was severe as well as a February 1996 physical therapy report stating that his back pain "can be very severe" and that he "can't lay on back or stomach." It is unclear from the report whether the entry merely recorded Walker's own complaints of pain, or whether it reflected the treating therapist's personal diagnosis of Walker's condition (and thereby corroborated Walker's pain complaints). Given the ambiguity inherent in the report, we decline to conclude that there is no competent evidence in the record to

support Walker's claim that his condition was objectively serious.

 But even if we were to assume that Walker's condition was objectively serious, we nevertheless conclude that Walker failed to show that prison staff treated him with deliberate indifference. Although the district court did not reach this question, the record shows no evidence that prison officials acted with "reckless disregard" towards his medical needs by " 'inaction or woefully inadequate action.' " *Reed v. McBride,* 178 F.3d 849, 854 (7th Cir.1999) (quoting *Hudson v. McHugh,* 148 F.3d 859, 863 (7th Cir.1998)). Mere dissatisfaction with a particular course of treatment, or even malpractice, does not amount to deliberate indifference. *See Snipes v. DeTella,* 95 F.3d 586, 592 (7th Cir.1996). Here, Walker's only evidence that his treatment was inadequate is his dissatisfaction, stated in his affidavit and letters to prison authorities, with the care he received at GBCI. The record shows that he was not denied care at GBCI, but was examined on several occasions by Reyes, who gave Walker a low-bunk assignment. Without any medical evidence of inadequate treatment, a prisoner's self-serving opinion of the quality of treatment is insufficient to raise a genuine issue of material fact. *See Walker v. National Recovery, Inc.,* 200 F.3d 500, 503 (7th Cir.1999).

Walker also appeals the district court's dismissal of two defendants, the Wisconsin Department of Corrections and the Wisconsin Bureau of Health Services. The district court dismissed them because it found that they were not suable entities under § 1983. The district court is correct that state agencies are not "persons" within the meaning of § 1983 and thus are not subject to suit. *See Ryan v. Ill. Dept. of Children and Family Servs.,* 185 F.3d 751, 758 (7th Cir.1999) (holding that state agency was not a "person" under § 1983).

Thus, the district court properly dismissed these defendants.

 In a related argument. Walker contends that the district court erred by denying his motion to amend his complaint to reintroduce the Department of Corrections and Bureau of Health Services as defendants. The proposed amendments would have added allegations regarding the involvement of those agencies in his medical care. Although leave to amend is "freely given when justice so requires," Fed.R.Civ.P. 15(a), "leave to amend need not be given if there is an apparent reason not to do so, such as ... futility of amendment." ' *Chavez,* 251 F.3d at 632 (quoting *Payne v. Churchich,* 161 F.3d 1030, 1036 (7th Cir.1998)). As stated above, the agencies are not subject to suit under § 1983, and the district court therefore did not abuse its discretion in concluding that any amendment to add these defendants would have been futile.

Lastly, Walker appeals the court's denial of his motions for Rule 11 sanctions. Walker's motions argued that the defendants presented false information as to whether he had received medication for his back and that the defendants failed to answer his interrogatories. The district court denied the motions, noting that the allegation of false information was nothing more than a disagreement regarding the evidence. The court then found that the motion regarding the defendants' failure to answer interrogatories was untimely because it was not filed until after summary judgment and because Walker had never moved to compel production. The district court's decisions were well-founded and not an abuse of discretion.

The decision of the district court is AFFIRMED.

Creasy's failure to file a brief in the proceedings below calls into question whether she has adequately preserved any

issue for appeal. An extremely generous reading of her complaint, however, preserves the limited issue whether substantial evidence supports the ALJ's finding regarding Creasy's disability onset date. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Kepple v. Massanari*, 268 F.3d 513, 516 (7th Cir.2001). Throughout her appellate brief Creasy raises variations of the substantial evidence claim, but none of these arguments have any merit.

First, Creasy claims that the ALJ based his decision on an incomplete and therefore defective record. She claims that the record is deficient because it lacks her live testimony, that of her corroborating witnesses, and cross-examination of medical and vocational experts. Because the record does not contain additional evidence regarding her condition, she argues that any conclusions based on it are unsupported. But while it is true that an ALJ has a duty to develop a "full and fair record," *Howell v. Sullivan*, 950 F.2d 343, 348 (7th Cir.1991), the ALJ is entitled to assume that an applicant represented by counsel "is making his strongest case for benefits," *Glenn v. Sec'y of Health & Human Servs.*, 814, F.2d 387, 391 (7th Cir.1987). In this case, the ALJ based his decision upon review of a record replete with medical reports and written statements submitted by Creasy and her family. Many of these documents contained descriptions of Creasy's symptoms and condition. Additionally, the ALJ gave Creasy and her attorney numerous opportunities throughout the proceedings to supplement the record with information they deemed necessary for a fair consideration of Creasy's disability claim. Accordingly, a full and fair record was compiled.

Creasy next argues that the district court and the ALJ erred because there was sufficient evidence for the ALJ to determine that she was disabled before turning 50. Creasy misunderstands the nature of this court's review. Whether or not an earlier onset date could have been chosen is irrelevant. When a claimant challenges the onset date established by the ALJ, the issue is whether there is substantial evidence in the record to support the date chosen by the ALJ, "not whether an earlier date could have been supported." *Stein v. Sullivan*, 892 F.2d 43, 46 (7th Cir.1989). Creasy raises nothing to disturb the ALJ's conclusion that she became disabled at age 50.

Finally, Creasy claims that substantial evidence does not support the ALJ's findings, in particular his analysis under steps two and five of the sequential evaluation, because the findings ignore the medical evidence of her disabling condition as presented by her treating physician, Dr. Dickerson. Creasy's challenge of the ALJ's step two analysis is puzzling because all parties agree that Creasy suffers a "severe" impairment. Without a finding of a severe impairment, the ALJ would not have proceeded through the remainder of the sequential analysis. As for the ALJ's step five analysis, Creasy also claims that the ALJ impermissibly substituted his own judgment for that of her treating physician, Dr. Dickerson. Although Dr. Dickerson may have concluded that Creasy was "totally disabled," the ultimate decision of disability rests with the ALJ, after review of the entire record. *See Diaz v. Chater*, 55 F.3d 300, 306 n. 2 (7th Cir.1995). Furthermore, Dr. Dickerson's assessments regarding Creasy's residual functional capacity were not entirely consistent. In one report, for example, Dr. Dickerson stated that Creasy was "physically and emotionally disabled from any type of gainful employment," yet elsewhere went on to concede that Creasy could perform sedentary work with some limitations. Because Dr. Dickerson's RFC assessment suggested

that Creasy could perform "a type of sedentary job that is not very stressful or intellectually demanding" subject to certain environmental controls, substantial evidence supports the ALJ's conclusion that Creasy could perform sedentary work subject to the limitations that Dr. Dickerson identified.

## CONCLUSION

For the forgoing reasons, the ALJ's decision finding Creasy not disabled prior to reaching age 50 is AFFIRMED.