Thomas FISCHER, Plaintiff,

v.

Jo Anne B. BARNHART,
Commissioner of Social
Security, Defendant.

No. 03 C 5764.

United States District Court,
N.D. Illinois,
Eastern Division.

March 16, 2004.

George G. Weber, Aurora, IL, for Plaintiff.

Malinda Hamann, Special Assistant U.S. Attorney, Chicago, IL, for Defendant.

### MEMORANDUM ORDER

BOBRICK, United States Magistrate Judge.

Plaintiff Thomas Fischer brings this action pursuant to 42 U.S.C. § 405(g) to review a final decision of the Commissioner of Social Security ("Commissioner") denying him Disability Insurance Benefits ("DIB").

### I. BACKGROUND

Plaintiff filed an application for DIB on February 20, 2001, alleging he became disabled on July 1, 2000. (Administrative Record ("R.") at 88–90). His application was denied at the initial levels of administrative review (R. 65–75), and he requested an administrative hearing. (R. 76). On January 7, 2003, an administrative law judge ("ALJ") conducted a hearing at which plaintiff, who was represented by counsel, appeared and testified, along with his friend, Cynthia Graves, with whom he lives. (R. 28–64). In addition, Stanley Hunton, a vocational expert, also testified. (R. 28, 53–62). At the time of the hearing, plaintiff was employed and amended his application as one for a closed period of disability from July 1, 2000, to November 21, 2001. (R. 31–32). The ALJ considered

all the evidence of record and, in a decision dated February 12, 2003, found that plaintiff was not disabled because he retained the ability to perform his past relevant work as a computer operator helper. (R. 15–18). This became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review of the decision on June 12, 2003. (R. 8–9).

## A. Evidence of Record

Plaintiff was born on September 30, 1959, making him forty-three years old at the time of the ALJ's decision. (R. 34). Before he entered kindergarten, he underwent a psychological evaluation, which noted a family history of cerebral palsy. (R. 137). He was thought to have normal intellectual ability, but lagged in motor skills. (R. 139). There was a question as to whether he could stand the physical pace of kindergarten activity. (R. 139).

By 1970, plaintiff's poor performance in school prompted another psychological evaluation. At that time he was in fifth grade, and had repeated third grade. (R. 142). Wechsler Intelligence testing resulted in a verbal I.Q. score of 87, a performance I.Q. score of 72, and a full scale I.Q. score of 78. (R. 143). The discrepancy of fifteen points between the verbal and performance scores supported the existence of a learning disability as opposed to mental retardation. (R. 144). His performance on the verbal subtest placed him just below the mean, but much higher than what would be considered retarded. (R. 144). It was recommended that plaintiff continue in regular classroom integration, but receive help from a learning disabilities specialist. (R. 147).

Plaintiff graduated from high school, where he took some special education classes. (R. 34). Beginning in 1983, plaintiff worked as a computer operator helper, running financial reports, such as invoices, on the computer, and then delivering them throughout the office. (R. 43). He held this job until the company was sold in June of 2000, and everyone in that office was laid off. (R. 37). Thereafter, he sought work, with the help of his friend, Cynthia Graves. (R. 46). She assisted him with his resume and helped him use the fax machine to send applications. (R. 49–50). Plaintiff sent out 100 to 200 resumes and got called for just five interviews. (R. 46, 50). Eventually, a man with whom plaintiff had worked with in his previous job recommended him for a position as a computer operator helper at another company. (R. 47–48). Plaintiff has been working at this new position since November 21, 2001. (R. 31).

The record contains no medical evidence from the date of plaintiff's psychological evaluation in 1970, until March 30, 2001. At that time, Dr. N. Musa examined plaintiff at the request of the state disability agency. (R. 148–151). Plaintiff's gait was unsteady, but there were no motor, strength, or sensory deficits in his extremities and range of motion was normal. (R. 148–149). Knee reflexes were brisk bilaterally. (R. 149). The doctor thought a cane might help steady plaintiff's gait. (R. 148). Vision was 20/50 in plaintiff's right eye. (R. 19–150). Blood pressure was elevated at 120/98. (R. 149–150). The doctor noted plaintiff's history of mental retardation since childhood. (R. 150).

Plaintiff underwent a psychological evaluation at the state disability agency's request on April 16, 2001. (R. 152–157). The psychologist, Terrance McGovern, conducted a Wechsler Adult Intelligence Scale test. (R. 152). Plaintiff achieved an verbal I.Q. score of 89, which was low average, a performance I.Q. score of 70, which was borderline, and a full scale I.Q. score of 78, which was also borderline. (R. 156). Dr. McGovern felt the results suggested an organically based hemispheric

deficit and that further neurological testing might be warranted. (R. 156).

Five state agency medical consultants reviewed plaintiff's medical record: two considered whether plaintiff's condition met a listed impairment, two determined plaintiff's residual functional capacity. Donald Hensen, Ph.D., felt plaintiff's mental impairment was not severe. (R. 158). He then evaluated plaintiff under listing 12.05 for mental retardation, noting that plaintiff had a possible learning disability. (R. 158, 162). Dr. Henson indicted that plaintiff suffered only mild restrictions of daily activities, mild difficulties in social functioning, and mild difficulties in maintaining concentration. (R. 168). There was no evidence of any episodes of decompensation. (R. 168). Bronwyn Rains and John Tomassetti, Ph.D.,[1] also felt plaintiff's mental impairment was not severe. (R. 172). He evaluated plaintiff under listing 12.02 for organic mental disorders, also noting that plaintiff had a learning disorder. (R. 172–173). Dr. Tomassetti also indicated that plaintiff exhibited only mild restrictions of daily activities, mild difficulties in social functioning, and mild difficulties in maintaining concentration. (R. 182). Again, there was no evidence of any episodes of decompensation. (R. 182). Neither review found that plaintiff's condition met a listed impairment. Both noted that plaintiff had worked for seventeen years before being laid off. (R. 170, 172).

Two other medical consultants completed residual functional capacity assessments. One was done by an individual whose name is illegible; it is not even clear that he or she is a physician. (R. 186–193). The other was signed by both Dr. Henry Bernet and Dr. Glen Wishterman. (R. 201). The two physicians apparently agreed that plaintiff could perform medi-um work that did not involve climbing ladders, ropes, or scaffolds. (R. 196). They also noted that plaintiff's only significant restriction was an unsteady gait that could be resolved with the use of a cane. (R. 201).

At the hearing, plaintiff testified that he could read and write, but slowly. (R. 34). As for mathematics, he stated he could add and subtract, multiply to a certain degree, and divide a little bit. (R. 34–35). He described his job as running reports on the computer and then delivering them. (R. 36). This required him to walk around the plant, but he felt it was not a lot of walking. (R. 36). This was essentially the same job that he had performed with his previous employer. (R. 37). Plaintiff indicated that he had problems balancing when walking up and down stairs if he could not hold on. (R. 38). He could lift and carry forty pounds on level ground, but might trip if there were a raised area. (R. 38, 40). He also said he could walk pretty far. (R. 39). According to plaintiff, he had fallen a week prior to the hearing. (R. 38). He stated that he does not use a cane, but that he once used a walker when he sprained his knee, but no longer needed it. (R. 48). Plaintiff also felt he had trouble with speech and memory. (R. 39). He testified that he was able to drive a car and shop for groceries. (R. 40). He also testified that he was active at his church, helping to set up the gymnasium for special functions. (R. 40–41).

Cynthia Graves testified that she and her son shared a townhouse with plaintiff. (R. 42). She stated that plaintiff fell quite often. (R. 42). She said she had seen him fall several times, including the week before at church and while bringing in groceries. (R. 51). According to Ms. Graves,

---

**1.** Mr. Rains and Dr. Tomassetti apparently completed their evaluation of the record in concert, as they both signed the same form.

plaintiff told her he was having a lot of problems at his new job because they do things a little bit differently then at his old job. (R. 52).

Stanley Hunton testified as a vocational expert. He described plaintiff's past work as not quite a computer operator, but an accommodated position in which he received help; a computer operator/helper. (R. 54). It was light work, and marginally semi-skilled. (R. 55). Mr. Hunton testified that a hypothetical person with the ability to read and write very slowly and the physical and mental restrictions found by the consulting physicians and psychologists—medium work that did not involve climbing ladders, ropes, or scaffolds; mild restrictions of daily activities, social functioning, and maintaining concentration—could perform plaintiff's past work. (R. 55).

### B. ALJ's Decision

After considering all the evidence of record, the ALJ determined that while the plaintiff suffered from cerebral palsy—he found plaintiff's mental impairment was not severe—plaintiff's condition did not meet or equal an impairment listed as disabling by the Commissioner's regulations. (R. 18). The ALJ also found that plaintiff had been performing substantial gainful activity since November of 2001. (R. 18). According to the ALJ, during the period plaintiff was not working, he retained the capacity to perform medium work[2] not involving climbing ladders, ropes, or scaffolds; concentrated exposure to hazards; or more than occasional balancing or climbing of ramps or stairs. (R. 18). The ALJ then concluded that, throughout the period when plaintiff was not working, he retained the capacity "to return to his past relevant work as a computer operator helper, which he did in fact

return to." (R. 18). As a result, the ALJ found that plaintiff was not disabled under the Act during the period at issue. (R. 18). This stands as the Commissioner's decision and is presently before this court for review. 42 U.S.C. § 405(g).

### II. ANALYSIS

The applicable standard of review of the Commissioner's decision is a familiar one. The Social Security Regulations provide a five-step sequential inquiry to determine whether a plaintiff is disabled:

1) is the plaintiff currently unemployed;

2) does the plaintiff have a severe impairment;

3) does the plaintiff have an impairment that meets or equals one of the impairments listed as disabling in the Commissioner's regulations;

4) is the plaintiff unable to perform his past relevant work; and

5) is the plaintiff is unable to perform any other work in the national economy.

20 C.F.R. §§ 404.1520; *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir.2004). An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. 20 C.F.R. § 404.1520; *Stein v. Sullivan*, 892 F.2d 43, 44 (7th Cir.1989). A negative answer at any point, other than step 3, stops inquiry and leads to a determination that the claimant is not disabled. 20 C.F.R. § 404.1520; *Stein*, 892 F.2d at 44. The plaintiff bears the burden of proof through step four; if it is met, the burden shifts to the Commissioner at step five. *Brewer v. Chater*, 103 F.3d 1384, 1391 (7th Cir.1997). Here, the ALJ determined, at step four, that the plaintiff could perform his past

---

**2.** Under the Commissioner's regulations, medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. 20 C.F.R. § 404.1567(c).

relevant work as a computer operator helper during the period he had not been working.

The court must affirm this decision if it is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir.1997), *citing Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). The court may not reweigh the evidence, or substitute its judgment for that of the Social Security Administration. *Binion*, 108 F.3d at 782. Where conflicting evidence would allow reasonable minds to differ as to whether the plaintiff is disabled, the Commissioner has the responsibility for resolving those conflicts. *Id.* Conclusions of law are not entitled to such deference, however, so where the Commissioner commits an error of law, the court must reverse the decision regardless of the volume of evidence supporting the factual findings. *Id.* In this case, the plaintiff argues that the ALJ erred in finding that the plaintiff's condition did not meet or equal a listed impairment.

Before assessing the ALJ's opinion, we note that, though the ALJ need not address every piece of evidence, he must articulate, at some minimum level, his analysis of the record so that the reviewing court can follow his reasoning. *Johansen v. Barnhart*, 314 F.3d 283, 287 (7th Cir.2002). To be sure, the ALJ's decision in this case is somewhat brief, even terse. By the same token, however, the record contains very little medical evidence regarding either of plaintiff's alleged impairments. The plaintiff underwent psychological evaluation as a youth, and then, apparently, saw no psychologists or physicians until the state disability agency arranged consultative exams in connection with the plaintiff's application for disability

benefits. Given that this was the record that was before the ALJ, it bears repeating that it is the plaintiff's burden of proof through the first four steps of the sequential evaluation.

Plaintiff's counsel has maintained—both at the administrative level and here—that plaintiff's condition meets listing 12.05C for mental retardation. (R. 10–11, 17, 134–135; *Plaintiff's Motion to Reverse the Final Decision of the Commissioner*, at 7–9). The ALJ, however, determined that plaintiff's mental impairment was not severe. This was a "step-two" determination, which foreclosed consideration of whether plaintiff's mental impairment met or equaled a listing at step three. Nevertheless, the ALJ addressed plaintiff's counsel's contention, and found that the plaintiff's mental impairment did not meet or equal listing 12.05C. (R. 17). After a review of the record and the ALJ's opinion, in both respects, we find that his decision is supported by substantial evidence and must be affirmed.

At step two of the five-step disability inquiry, the ALJ determines whether the plaintiff has "any impairment or combination of impairments which significantly limits [his] physical or mental ability to do basic work activities ..." 20 C.F.R. § 404.1520(c); *Bowen v. Yuckert*, 482 U.S. 137, 141, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987) (upholding the validity of the "severe impairment" requirement). The Commissioner's regulations explain that an impairment is "not severe" if "it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a); *Nelson v. Apfel*, 210 F.3d 799, 802 (7th Cir.2000). *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir.2001). Here, the ALJ relied on the findings of state agency psychologists to determine that the plaintiff does not have a severe mental impairment.

Under the regulations, the Commissioner rates the degree of the functional limitations resulting from a mental impairment "based on the extent to which [the] impairment(s) interferes with [the plaintiff's] ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. § 404.1520a(c)(2). Relevant factors to be considered in this analysis include the quality and level of the plaintiff's overall functional performance, any episodic limitations, the amount of supervision or assistance the plaintiff requires, and the settings in which the plaintiff is able to function. *Id.* There are four broad functional areas in which the Commissioner rates the degree of functional limitation: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3); *Nelson v. Apfel,* 210 F.3d 799, 802 (7th Cir.2000). The degree of limitation in the first three functional areas—activities of daily living; social functioning; and concentration, persistence, or pace—is rated on a five-point scale: none, mild, moderate, marked, and extreme. 20 C.F.R. § 404.1520a(c)(4). The degree of limitation in the fourth functional area—episodes of decompensation— is rated on a different four-point scale: none, one or two, three, four or more. *Id.* The last point on each of these scales represents a degree of limitation that is incompatible with the ability to do any gainful activity. *Id.* On the other hand, if the degree of limitation in the first three functional areas is "none" or "mild," and "none" in the fourth area, this will generally result in a finding that the plaintiff's impairment is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in the plaintiff's ability to do basic work activities. 20 C.F.R. § 404. 1520a(d)(1).

In this case, three psychological consultants performed this analysis based on the record. None of the consultants felt plaintiff suffered from mental retardation, but more likely a learning disability. (R. 162, 173). All three concluded that plaintiff's degree of limitation in the first three functional areas was "mild" and that his degree of limitation in the fourth functional area was "none." (R. 168, 182). Under the regulations, these ratings lead to a finding that the mental impairment "is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in [the] ability to do basic work activities." 20 C.F.R. 404.1520a(d)(1). Here, all three consultants noted plaintiff's seventeen-year work history, which was interrupted only when the company was sold and the site closed. (R. 170, 172). As such, the evidence did not indicate that plaintiff suffered more than a minimal limitation in the ability to do basic work activities. Accordingly, the three consultants agreed that the plaintiff's mental impairment was not severe. (R. 158, 172). This would also mean that plaintiff's mental impairment would not meet or equal a listed mental disorder. 20 C.F.R. § 404.1520a(d)(2).

Under the regulations, an ALJ must consider these evaluations as expert opinion evidence. 20 C.F.R. § 404.1527(f)(2)(i). Here, the ALJ adopted the evaluations, finding that, during the period in which plaintiff was not working:

the record does not establish that claimant's impairment met Listing 12.05C, as argued by counsel, consistent with the assessment of reviewing state agency physicians, expert evidence under SSR 96–6p. These findings regarding the nature and severity of the claimant's impairments are being adopted since consistent with the medical evidence and claimant's activities. While the claimant's testimony was credible, it is not indicative of a qualifying condition, given his activities, especially his substantial gainful activity for many;[sic] years be-

fore the period at issue as well as for [the] period thereafter.

(R. 17). Thus, properly relying on the consultants' evaluations, the ALJ determined that the plaintiff's mental impairment was "not severe." From that conclusion, it follows that plaintiff's mental impairment cannot be found to meet or equal a listed impairment.

As already noted, the ALJ also addressed plaintiff's counsel's argument that plaintiff's mental impairment met listing 12.05C for mental retardation. In order for an individual to be found disabled under this listing, the individual's condition must fulfill the following requirements:

> 12.05 Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or mental impairment imposing an additional and significant work-related limitation of function; OR
>
> \*　　\*　　\*　　\*　　\*　　\*

20 C.F.R. Pt. 404, Subpt. P, App. 1. As the plaintiff has recorded a valid IQ score of 70 (R. 156), and has the additional impairment of cerebral palsy, he submits that his mental impairment meets listing 12.05C.

The first and most obvious answer to plaintiff's contention is that three state agency psychologists found that his mental impairment did not meet or equal a listing. The ALJ may properly rely on the opinions of these medical experts on the issue of whether an impairment meets or equals a listed impairment. *Scheck,* 357 F.3d at 700. The second answer is that, for the purposes of the Listing of Impairments, plaintiff has not established that he suffers from mental retardation.

In order to prove his impairment meets listing 12.05C, plaintiff must demonstrate that it satisfies the diagnostic description for the listed impairment. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(A).[3] More specifically, the regulations explain that:

> The structure of the listing for mental retardation (12.05) is different from that of the other mental disorders listings. Listing 12.05 contains an introductory paragraph with the diagnostic description for mental retardation. It also contains four sets of criteria (paragraphs A through D). If your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets the listing.

*Id; See Foster v. Halter,* 279 F.3d 348, 354 (6th Cir.2001) (noting recent amendments to the regulations clarify that a claimant will meet the listing for mental retardation only "[i]f [the claimant's] impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria...."). Thus, under listing 12.05, plaintiff must demonstrate a diagnosis of mental retardation—"significantly subaverage general intellectual functioning with deficits in adaptive functioning"—prior to age twenty-two. The record in this case, however, does not include *any* diag-

---

**3.** 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(A) was amended by 65 Fed.Reg. 50746, 50776 (August 21, 2000). (emphasis added). The new rules revising the regula-tions for evaluating mental impairments were effective September 20, 2000. *Foster,* 279 F.3d at 354; *Blakes ex rel. Wolfe v. Barnhart,* 331 F.3d 565, 570 (7th Cir.2003).

nosis of mental retardation at *any* point in plaintiff's life.[4]

Before the age of twenty-two, plaintiff had two psychological evaluations, neither of which diagnosed mental retardation. In the first, in 1963, plaintiff was found to have "at least normal intellectual skills." (R. 139). In the second, in 1970, the psychologist specifically indicated that plaintiff had a learning disability as opposed to mental retardation. (R. 144, 147). Indeed, rather than "significantly subaverage," plaintiff's test scores placed him "just slightly below the mean but certainly much higher than one would expect a retarded child to achieve." (R. 144). Thus, the record does not support a diagnosis of mental retardation before plaintiff was twenty-two years old. Indeed, the psychological consultants who reviewed the record and assessed the severity of plaintiff's mental impairment indicated that he suffered from a learning disability, rather than mental retardation. The ALJ appropriately adopted these assessments, and substantial evidence supports the ALJ's conclusion that plaintiff's mental impairment does not meet listing 12.05C.

 Finally, we note that the plaintiff briefly submits that he could not return to his past work. (*Plaintiff's Motion to Reverse the Final Decision of the Commissioner*, at 10). The plaintiff bases this contention on the testimony of the VE, arguing that:

> The Vocational Expert testified that [plaintiff's] past work was a computer operator helper and that this job was not in the Dictionary of Occupational Titles, but was an accommodated position, and the [plaintiff's] could not perform all the duties of a computer operator as defined by the D.O.T.

(*Plaintiff's Motion to Reverse the Final Decision of the Commissioner*, at 9). Plaintiff's argument is not entirely clear, but it would seem to be that because plaintiff could not perform all the duties of a computer operator, he could not perform his past work. A plaintiff will be found unable to perform his past work if he can prove he does not have the residual functional capacity to perform the functional demands and duties of his past job either as he actually performed the job or as was generally required by employers throughout the national economy. *Brewer v. Chater*, 103 F.3d 1384, 1393 (7th Cir.1997). Here, contrary to plaintiff's assertions, the ALJ did not determine that plaintiff could perform the duties of a computer operator. Instead, the ALJ concluded that plaintiff could perform the duties of a computer operator helper, which was actually plaintiff's past relevant work. Indeed, plaintiff *has* returned to this past work. In reaching this determination, the ALJ properly relied on the testimony of the VE that a person with the plaintiff's limitations, as supported by the record, could perform such work. *See Kasarsky v. Barnhart*, 335 F.3d 539, 543 (7th Cir.2003) ("to the extent the ALJ relies on testimony from a vocational expert, the question posed to the expert must incorporate all relevant limitations from which the claimant suffers"). Accordingly, we find that the ALJ's decision is supported by substantial evidence and must be affirmed.

---

4. The only mention of mental retardation in the record is not a diagnosis but merely a mention in a report of a consultative *physical* examination in 2001, in which the doctor refers to plaintiff's "mental retardation since childhood." (R. 150). Obviously, since there was no diagnosis of mental retardation during plaintiff's childhood, and the doctor conducted no mental examination or testing, this comment, apparently based on plaintiff's own statement of his history, does not meet the "diagnostic description" of the listing for mental retardation.

## III. *CONCLUSION*

For the foregoing reasons, the defendant's motion for summary judgment is GRANTED, and the plaintiff's motion to reverse the final decision of the Commissioner is DENIED.